UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DASHONE MARCEL REYNOLDS | * | CIVIL ACTION |
| VERSUS | * | NO. 22-1305 |
| LT. GRIFFIN, ET AL. | * | SECTION "R" (2) |

**REPORT AND RECOMMENDATION**

Plaintiff Dashone Marcel Reynolds filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants Lt. Griffin, Sgt. Ruffin and Dy. Johnson based on allegations that his constitutional rights were violated when Sgt. Ruffin subjected him to a strip search, Dy. Johnson read his mail (legal papers from court), and Lt. Griffin failed to take any action when plaintiff complained to him about these events. ECF No. 3.

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit a Report and Recommendation for disposition pursuant to Local Rule 73.2(A) and 28 U.S.C. § 636(b)(1)(B) and (C), including statutory frivolousness review under 28 U.S.C. § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, I have determined that these matters can be resolved without further hearings.

Having considered the record, including Plaintiff's complaint, his § 1983 Fact Statements, additional supplemental filings, *Spears* hearing testimony, and the applicable law, after liberally construing Plaintiffs' claims, the undersigned recommends that Plaintiff's claims be DISMISSED WITH PREJUDICE for the reasons stated herein as his allegations fail to establish a cognizable § 1983 claim for violation of constitutional rights, even under the broadest reading of his claims.

1

I. **BACKGROUND**

    A. **The Complaint and Supplemental Filings**

Plaintiff Dashone Marcel Reynolds is housed in the Orleans Justice Center ("OJC"). ECF No. 3, ¶II(A), at 2. He filed this *pro se* and *in forma pauperis* prisoner civil rights suit under 42 U.S.C. § 1983 against defendants Lt. Griffin, Sgt. Ruffin, and Dy. Johnson alleging that on May 3, 2022, he was unreasonably strip searched by Sgt. Ruffin for something that happened on a different pod. *Id.* ¶IV, at 4. He also claims that, during the related cell search, Dy. Johnson read his legal papers and mail. *Id.* Plaintiff claims that he told Lt. Griffin about his rights being violated, and Lt. Griffin told plaintiff he did not have any rights in jail. *Id.*

Reynolds argues that he has the right to humane treatment, not to be stripped search, and to not have his mail and legal papers read. *Id.* ¶ IV, at 4-5. He asks that the Court take disciplinary action against the defendant officers for their misconduct and abuse of power in violation of his constitutional right to humane treatment. *Id.* ¶ V, at 5.

In response to this Court's Order directing Plaintiff to provide a list of the full names of all persons whom he contends violated his constitutional rights as asserted in this case; advise whether he is presently incarcerated based on a conviction; a statement of the facts expected to be offered at trial either orally or as documents; a list of all documents to be offered at trial; and a list of witnesses to be called at trial, Plaintiff filed two separate responses which simply stated that he had been unable to obtain the full names of the defendants (identifying them as Lt. C. Griffin, Sgt. R. Ruffin, and Deputy L. Johnson, Jr.) and he had no witnesses. ECF Nos. 7, 9. Neither of Plaintiff's responses provided the bulk of the requested information. Accordingly, the Court scheduled a *Spears* hearing to provide Plaintiff with another opportunity to expound on his allegations. ECF Nos. 10, 11.

### B. *Spears* **Hearing Testimony**

On November 4, 2022, I conducted a video conference in this matter. Participating was Plaintiff proceeding *pro se*. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. Reynolds confirmed many of the details outlined above during his *Spears* testimony.

Reynolds expounded on his Complaint by explaining that there had been an overdose on another POD, after which everyone at the facility went through cell and strip searches. His strip search entailed him being asked to step to the back of his cell, disrobe, squat and cough. There was no physical contact by any deputy, and Reynolds did not have a cellmate. The only people in the cell besides Reynolds were Sgt. Ruffin, who directed the search, Deputy Johnson and another deputy, all of whom are male like Reynolds.

While in the yard during the cell search, Reynolds watched his cell being searched through a window. He saw Dy. Johnson read legal mail that Reynolds had received from court. Reynolds confirmed that none of his mail was taken, and Deputy Johnson's review of the mail has not interfered with or impacted his litigation. Because Reynolds believed that it was not reasonable to search his cell or conduct a strip search based on an overdose on anther POD, he complained to Lt. Griffin because he supervises the officers who conducted the search. Lt. Griffin was not present during either the strip or cell search. In response to Reynolds' complaint, Lt. Griffin told Reynolds that he had no constitutional rights while in jail.

Reynolds' Complaint indicates that he did not file a formal grievance. ECF No. 1 ¶ II, at 2. He testified in the *Spears* hearing that he believed that complaining to Lt. Griffin was sufficient. When asked about Grievance No. 647202 mentioned in his filings (ECF Nos. 7, 9), Reynolds could

not recall the incident to which that grievance related. I allowed additional time for Reynolds to provide that information. In Reynolds' supplemental filing, he states that Grievance No. 647202 sought the full names of the officers involved in the incidents at issue in this § 1983 case. ECF No. 12.

## II.   LEGAL STANDARDS

As a prisoner seeking redress from an officer or employee of a governmental entity, Reynolds' Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[1] Section 1915A provides for *sua sponte* dismissal of a complaint, or any portion thereof, if it is frivolous or malicious or it fails to state a claim upon which relief may be granted.[2]

### A.  Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[3] A claim is frivolous if it "lacks an arguable basis in law or fact."[4] A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[5] A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[6] A court may not dismiss a claim simply because

---

[1] *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam).
[2] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).
[3] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F. 3d at 579-80.
[4] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citation omitted). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[5] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[6] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

the facts are "unlikely."⁷

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.⁸ The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.⁹ The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.¹⁰

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."¹¹ Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"¹²

---

⁷ *Id.*
⁸ *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
⁹ *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).
¹⁰ *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).
¹¹ *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); accord *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 n.10 (5th Cir. 2017) (citations omitted)).
¹² *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[13] If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[14] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[15]

### B. Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[16]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[17]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[18]

---

[13] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[14] *Id.*
[15] *Id.*
[16] 42 U.S.C. § 1983.
[17] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[18] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[19] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[20]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[21]

### C. The Strip Search of Prisoners

The Fourth Amendment, which prohibits unreasonable searches,[22] provides the standard for evaluating inmate claims of unconstitutional body searches.[23]  An inmate's Fourth Amendment protections, however, are greatly limited in the context of prison searches, with a prisoner's rights being diminished by the needs and exigencies of the institution in which he is incarcerated through a balancing test measured against the institution's legitimate penological concerns.[24]

In *Bell v. Wolfish*,[25] the Supreme Court upheld a rule requiring pretrial detainees in federal correctional facilities "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution[s]," deferring to the judgment of correctional officials that the inspections served not only to discover but also to deter the smuggling of weapons, drugs, and other prohibited items.  While noting that this holding did not condone all body cavity searches, the Court indicated that, in determining the reasonableness

---

[19] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[20] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[21] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).
[22] *Bell v. Wolfish*, 441 U.S. 520, 522 (1979).
[23] *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.1999) (citing *Elliott v. Lynn*, 38 F.3d 188, 191 n.3 (5th Cir.1994); *United States v. Lilly*, 576 F.2d 1240 (5th Cir.1978)).
[24] *Id.* at 236–37; *Elliott v. Lynn*, 38 F.3d 188, 190–91 (5th Cir. 1994) (citation omitted); *United States v. Lilly*, 576 F.2d 1240 (5th Cir.1978), *abrogated on other grounds by Hudson v. Palmer*, 468 U.S. 517, 522–23 (1984).
[25] 441 U.S. 520, 558 (1979).

of a strip search, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[26] Later, in *Florence v. Board of Chosen Freeholders of the County of Burlington*,[27] the Court upheld a jail's policy of strip searching new detainees who are held in the jail's general population area while their cases are being processed.[28] The Court reiterated its long-held belief that corrections officials are due deference when trying to deal with the inherent difficulties of running a detention center including keeping contraband out of the jail.[29]

A regulation impinging on an inmate's constitutional rights will be upheld if reasonably related to legitimate penological interests.[30] "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both."[31] "Strip searches, including visual cavity searches, on convicted prisoners do not require probable cause or reasonable suspicion."[32] Thus, in the prison context, the Fourth Amendment requires only that such searches be reasonable under all the facts and circumstances in which they are performed.[33]

There is no mechanical way to determine whether intrusions into an inmate's privacy are reasonable, and the need for a particular search must be balanced against the resulting invasion of personal rights that the search entails.[34] To assess reasonableness,[35] the court must consider the

---

[26] *Id.* at 559 (citations omitted).
[27] 566 U.S. 318 (2012).
[28] *Id.* at 339.
[29] *Id.* at 325-326.
[30] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[31] *Wolfish*, 441 U.S. at 561 (citation omitted).
[32] *Scheidel v. Garner*, No. 12–1815, 2013 WL 3778917, at *1 (W.D. La. July 17, 2013) (citing *Bell*, 441 U.S. at 558–59), *aff'd in part, vacated in part on other grounds sub nom. Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426 (5th Cir. 2014).
[33] *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017) (citations omitted).
[34] *Florence*, 566 U.S. at 325-27 (citing *Bell*, 441 U.S. at 559).
[35] For purposes of Fourth Amendment analysis, courts look to the objective reasonableness of conducting a search and not the officer's subjective intent. *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir.2013) (citations omitted).

scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted."[36]  As the Fifth Circuit explained:

> Under appropriate circumstances, . . . visual body cavity searches of prisoners can be constitutionally acceptable.  We have considered factors such as whether the search was performed by guards of the opposite sex; whether it occurred in public or private; and whether it was unreasonably lengthy.[37]

The Fifth Circuit thus interprets this reasonableness standard as striking a balance in favor of deference to prison authorities' views on institutional safety against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.[38]  The burden of proving the reasonableness of a search is a light one because an administrator's decisions and actions in the prison context are entitled to great deference.[39]

### D. Mail

Prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights: (1) the right of access to the courts, which the Supreme Court has

---

[36] *Bell*, 441 U.S. at 559.
[37] *Parker v. Woods*, 834 F. App'x 92, 95-96 (5th Cir. 2020) (footnotes, citation and quotation marks omitted*); see also Elliott,* 38 F.3d at 188 (holding visual body cavity searches conducted in the view of others may be reasonable if there were exigent circumstances ); *Carwell*, 168 F.3d at 234 (holding female guard's non-exigent cavity search of a male inmate may violate the Fourth Amendment); *Oliver v. Scott*, 276 F.3d 736, 745 n.13 (5th Cir. 2002) (recognizing that prisoners have a right to bodily privacy that provides limitations on the manner in which searches may be carried out) (citations omitted).
[38] *Elliott*, 38 F.3d at 193; *see also Marzett v. Brown*, No. 11-2264, 2012 WL 4482941, at *4 (E.D. La. Sept. 28, 2012) (holding as a matter of law that strip search of returning prisoner was not unreasonable where conducted to ensure safety and absence of contraband rather than for officials' entertainment or at their whim); *Grant v. Wisener*, No. 11-372, 2013 WL 1196090, at *3 (E.D. Tex. Mar. 22, 2013) (holding that strip search as part of comprehensive search measures after finding drugs in facility is not unreasonable) (citing *Hudson v. Palmer*, 468 U.S. 517, 529 (1984) ("deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions" and that "to advocate that prison searches must be conducted only pursuant to an enunciated general policy or when suspicion is directed at a particular inmate is to ignore the realities of prison operation."), *aff'd sub nom. Grant v. Taliaferro*, 594 F. App'x 278 (5th Cir. 2015); *Jones v. King*, No. 13-511, 2014 WL 7357842, at *6 (S.D. Miss. Sept. 23, 2014) (noting that strip searches for contraband are essential to ensure the safety of the facility, other prisoners and officers), *R.&R. adopted*, No. 13-511, 2014 WL 7358029 (S.D. Miss. Dec. 23, 2014).
[39] *Elliott*, 38 F.3d at 191; *Lilly*, 576 F.2d at 1245.

indicated lies in both the Due Process Clause and the First Amendment,[40] and (2) the right to freedom of speech guaranteed by the First Amendment.[41]

The right of access to the courts is implicated only when the mail in question is legal in nature,[42] but the right to access to the courts does not encompass more than an inmate's ability "to prepare and transmit a necessary legal document to a court."[43] Thus, to state a claim that opening or reading legal mail violated the constitutional of access to the courts, a plaintiff would have to demonstrate that his position as a litigant was actually prejudiced.[44] It is not sufficient for a prisoner only to establish that his mail was opened outside of his presence or without his consent.[45] To state a claim of violation of the right to free speech under the First Amendment, a plaintiff would have to show that his ability to communicate through outgoing mail was suppressed.[46] However, the Supreme Court "has never held that reading inmate mail violates the First Amendment."[47]

Regardless of which right is implicated, prisoners' constitutional rights with respect to mail are not absolute. Indeed, courts have recognized that legitimate penological interests can exist for prison personnel to open, review, and occasionally censor outgoing mail because of concerns about possible threats to prison security, including ensuring that the mail does not contain contraband.[48] A prison practice or regulation, including cell searches, may permissibly interfere with an inmate's

---

[40] *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974).
[41] *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).
[42] *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).
[43] *Vaccaro v. United States*, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); *Manning v. Sumlin*, 540 F. App'x 462, 463 (5th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Brewer*, 3 F.3d at 821).
[44] *Lewis*, 518 U.S. at 356; *Every v. Jindal*, 413 F. App'x 725, 727 (5th Cir. 2011) (citing *Lewis*, 518 U.S. at 349-50; *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006) (citation omitted); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (citations omitted).
[45] *Walker*, 4 F.3d at 413 (citation omitted).
[46] *Damm v. Cooper*, 288 F. App'x 130, 132 (5th Cir. 2008).
[47] *Busby v. Dretke*, 359 F.3d 708, 722 (5th Cir. 2004).
[48] *Franco v. Collins*, No. 14-148, 2015 WL 136544, at *1 (S.D. Tex. Jan. 8, 2015) (citing *Busby*, 359 F.3d at 721); *McCartney v. Keith*, No. 14-230, 2014 WL 5092017, at *2 (W.D. La. Oct. 9, 2014) (citing *Busby*, 359 F.3d at 721).

mail, including his legal mail, if the practice is "reasonably related to a legitimate penological interest."[49]

### E. Verbal Comments by Supervisor

Verbal comments by prison guards, even if offensive, do not invoke the constitution. "[V]erbal threats, name calling, and threatening gestures by prison guards do not amount to a constitutional violation."[50]  "[T]he mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."[51]  Further, the is no respondeat superior liability under § 1983.[52]  Thus, Lt. Griffin cannot be held liable under § 1983 pursuant to a theory of respondeat superior simply because the persons conducting the searches were under his supervision.[53]

## III.  ANALYSIS

The law is well-settled that the strip search of a prison inmate, which includes exposure of body cavities for visual inspection, is not per se unreasonable under the Fourth Amendment.  Nor must the search be predicated upon probable cause.  Rather, the Fourth Amendment requires only that search or seizure conducted on the prisoner be reasonable under all the facts and circumstances in which they are performed.

---

[49] *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (quotation omitted) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as to actions of a prison official); *Langley v. Bowman*, No. 16-1607, 2016 WL 6477036, at *6-*7 (E.D. La. Aug. 8, 2016) (opening and reading inmate's mail during cell search "was not completely arbitrary" and did not violate his rights) (citation omitted), *R.&R. adopted,* 2016 WL 6441288, at *1 (E.D. La. Nov. 1, 2016).
[50] *Watson v. Winborn*, No. 02-10984, 67 F. App'x 241, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (affirming determination that plaintiff had no actionable claim for alleged verbal threats by prison guards) (citation omitted).
[51] *Robinson v. Stephens*, No. 14-701, 2017 WL 4112363, at *11 (E.D. Tex. Aug. 9, 2017) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)) ("The use of words, no matter how violent, does not comprise a section 1983 violation." (citation omitted)), *R.&R. adopted,* 2017 WL 4101676 (E.D. Tex. Sept. 14, 2017).
[52] *Eason,* 73 F.3d at 1327; *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010) (citation omitted); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (citing *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).
[53] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983) (citation omitted).

In this case, Reynolds' Complaint contains insufficient factual allegations to survive a Rule 12(b)(6) motion, which would justify dismissal.[54]  Even supplemented by his *Spears* testimony, the facts make clear that search was conducted after an inmate on another POD overdosed on drugs.  Courts have repeatedly recognized that corrections officials are due deference when dealing with the inherent difficulties of running a detention center including keeping drugs and other contraband out of a prison facility.  Considering the particular facts in this case and the manner in which the search was conducted (i.e., a visual inspection conducted privately in the back of the cell with only the same gender guards present), the strip search cannot be considered unconstitutional.  Indeed, in similar cases implicating the legitimate penological needs of preserving order, discipline, security and safety in prison, courts have held that prisoners failed to assert any constitutional violation.[55]  Accordingly, Plaintiff fails to state a § 1983 claim based on the May 3, 2022, strip search in light of the facts and circumstances under which it was performed.

Assuming there were no legitimate penological interest for Deputy Johnson to read Reynolds' mail, Reynolds' claim based on his mail being read must still fail.  Reynolds confirmed that he did not suffer any actual prejudice from Deputy Johnson's reading of his mail, and Deputy Johnson did not take any of the mail.  Thus, he fails to state a claim against Deputy Johnson.  Finally, Lt. Ruffin cannot be liable under § 1983 based on his supervisory status, and verbal

---

[54] *See, e.g., Reynolds v. Orleans Par. Sheriff's Off.*, No. 21-1615, 2022 WL 989425, at *2 (E.D. La. Mar. 3, 2022) (recommending dismissal of complaint for failure to state a claim when plaintiff alleged only that he was subjected to strip search in August 2021 and failed to include any factual allegations from which the court could infer  the search was unreasonable), *R.&R. adopted*, No. 21-1615, 2022 WL 972287 (E.D. La. Mar. 31, 2022).

[55] *E.g., Florence*, 566 U.S. at 339*; Gipson v. Wilkinson,* 683 F. App'x 327, 328 (5th Cir. 2017); *Mabry v. Lee Cnty.*, 849 F.3d 232 (5th Cir. 2017); *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368-69 (5th Cir. 2017); *Parker v. Gusman*, No. 11-638, 2012 WL 7338060, at *2 (E.D. La. Nov. 16, 2012); *R.&R. adopted*, No. 11-638, 2013 WL 695007 (E.D. La. Feb. 26, 2013); *Jenkins v. City of New York*, No. 18-7024, 2020 WL 6700087, at *4 (E.D.N.Y. Nov. 12, 2020);  *Brown v. Blaine*, 185 F. App'x 166, 2006 WL 1716772, at *3 (3d Cir. 2006); *Elliott*, 38 F.3d at 193; *Tyson v. Tanner*, No. 084599, 2009 WL 2883056, at *3–4 (E.D. La. Aug. 25, 2009) (Berrigan, J.).

comments do not support a § 1983 cause of action. Accordingly, Reynolds fails to state a claim against Lt. Ruffin.

## IV. CONCLUSION

Plaintiff Dashone Marcel Reynolds' § 1983 claim is frivolous, and he fails to state a claim upon which relief can be granted. He does not set forth sufficient facts to suggest that his fourth amendment rights were violated by the strip search while incarcerated conducted in the manner identified in response to an inmate overdose. Likewise, he fails to state a cognizable claim with regard to his mail or based on verbal comments by a supervisor. Accordingly, Plaintiff's case should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e) and § 1915A as the claims are frivolous and fail to state a claim upon which relief may be granted.

## V. RECOMMENDATION

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff Dashone Marcel Reynolds' § 1983 complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[56]

---

[56] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (referencing the previously applicable ten-day period for the filing of objections). Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the objection period to fourteen days.

Dated this 21st day of November, 2022.

*Donna Phillips Currault*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE